UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20960-CIV-LENARD/GARBER/TURNOFF

**CAPITAL ONE, NATIONAL ASSOCIATION**, as Successor in Interest to North Fork Bank,

        Plaintiffs,

vs.

**M/Y VOYAGER,** *in rem*, **DJURIN MARINE INC., DAN DJURIN and IVAN DJURIN**,

        Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 115) ON THE MOTION FOR SUMMARY JUDGMENT AGAINST IN PERSONAM DEFENDANTS DAN AND IVAN DJURIN FILED BY PLAINTIFF CAPITAL ONE, NATIONAL ASSOCIATION. (D.E. 77)**

**THIS CAUSE** is before the Court on the Report and Recommendation on Capital One, National Association's Motion for Summary Judgment, issued by U.S. Magistrate Judge Barry L. Garber on November 4, 2009 ("Report," D.E. 115). On November 16, 2009, Defendants Dan Djurin and Ivan Djurin (collectively "Djurins") filed Objections to the Report and Recommendation ("Objections," D.E. 119). On November 23, 2009, Plaintiff Capital One, National Association ("Capital One") filed its response to Defendants' Objections ("Response," D.E. 123). Having reviewed the Report, the Objections and the Response, the Court finds as follows:

**I. Background**

As described in the Report, this case involves the Defendants' default under a loan agreement with Capital One's predecessor in interest, North Fork Bank, and Capital One's attempt to recover the principal loan amount, interest, costs and attorneys' fees resulting from that default.  On March 25, 2004, Defendants Djurin Marine, Inc., Dan Djurin and Ivan Djurin entered into a Marine Loan Note and Security Agreement ("Note") with Capital One in the principal amount of $3,440,00.00.  (*See* Marine Loan Note and Security Agreement, D.E. 1.)  Dan Djurin and Ivan Djurin signed the note as "Other Borrowers."  *Id.* at 15.  The note defined "Other Borrowers" as "personally liable for the principal balance and interest . . . and other obligations of the Borrower under the Agreement and Preferred Mortgage."  D.E. 1 at 9, ¶5.  To secure the Note, Defendant Djurin Marine, Inc. contemporaneously executed a First Preferred Ship Mortgage ("Mortgage") in the principal amount of $3,440,00.00 on the Motor Yacht Voyager ("Vessel"), her engines, tackle, rigging, dinghies, equipment and other appurtenances. (*See* First Preferred Ship Mortgage, D.E. 1 at 17-24.)

On or around March 25, 2008, Defendants ceased making payments due under the Note, thereby breaching the Note.  Defendants had also canceled insurance on the Vessel on or around January 1, 2008, in further breach of the Note. (See D.E. 1 at 11.)   As a result of Defendants' defaults under the Note, Capital One, as successor in interest to North Fork Bank, accelerated the obligations and demanded payment of  $3,007,224.20, the entire outstanding principal amount due under the loan.

2

Capital One commenced the instant suit on April 9, 2008, to recover the amount due under the loan, plus interest, costs and attorney's fees. (*See* Complaint, D.E. 1.) On November 6, 2008, this Court granted summary judgment against *in rem* Defendant Vessel M/Y Voyager and Defendant Djurin Marine, Inc., and ordered that the Vessel be sold by the United States Marshal at public auction. (*See* D.E. 57 at 6-7.) The Vessel was sold at auction on November 20, 2008, for $1,200,000.00. Defendants did not file objections to the sale. Pursuant to the Note, the actual sale price of the Vessel was deemed to be the "fair market value" for calculating the amount of deficiency in case of default. (*See* D.E. 1 at 14.)

Capital One now moves for summary judgment against the Djurins, claiming that pursuant to the Note and Mortgage there is no genuine question of fact that Dan Djurin and Ivan Djurin are jointly and severally liable for the deficiency judgment, including interest and late fees, attorney's fees and *custodia legis* charges. (*See* D.E. 77.) The Djurins argue that summary judgment is not proper because (1) the mortgage terms do not apply to the individual defendants, (2) the attorney's fees are unreasonable, (3) the *custodia legis* costs are unreasonable and (4) the fair market value of the vessel, used in calculating the deficiency amount, is too low. (*See* D.E. 91.)

The Report recommends that Capital One's Motion for Summary Judgment be granted in part and denied in part. The Report first concludes that the Djurins are individually responsible for the deficiency judgment and other fees based on the clear and unambiguous language of the Note and Mortgage. *See* D.E. 115 at 4. The Report also

3

finds that there is no issue of fact regarding the value of the vessel, as the parties' Note and Mortgage clearly provided that the fair market value of the Vessel would be its sale price at a judicially ordered public auction. *See* id. at 6. Regarding attorney's fees, the Report concludes that Capital One's attorneys billed excessively for services and for duplicative work or work that should have been done by administrative staff. *See id.* at 5. The Report recommends a twenty-five percent across the board reduction of attorney's fees. Finally, the Report finds a genuine issue of material fact regarding the amount and reasonableness of *custodia legis* fees, recommending that this issue be presented to the factfinder. *See id.* at 6.

The Djurins object to the Report, arguing that the provisions of the mortgage are susceptible to more than one reasonable interpretation and that the Report errs in harmonizing the language of the mortgage and Note. *See* D.E. 119 at 1-2. The Djurins also contend that the sale price of the Vessel was so far below its fair market value that the Court should use its discretion as a court of equity to adjust the fair market value upward for purposes of the deficiency judgment. *See id.* 119 at 2-3. Finally, the Djurins argue that the Report inadequately supports its recommendation that attorney's fees be reduced by twenty-five percent, suggesting that a seventy-five percent reduction is more appropriate. *See id.* at 3-4. The Djurins do not object to the Report's findings regarding the *custodia legis* fees, other than reiterating their belief that these expenses have been greatly exaggerated. *See id.* at 3.

Capital One's Response to the Djurins' Objections supports the Report's findings

with regard to the Djurins' liability for the deficiency judgment under the Note and Mortgage and the calculation of the fair market value of the Vessel for the purposes of the deficiency judgment. *See* D.E.123 at 1, 4. Capital One does not object to the Report's recommendation that attorney's fees be reduced by twenty-five percent or that the issue of *custodia legis* expenses should be presented to the factfinder. *See id.* at 2-3. Each of parties' claims are addressed in the Report and each are dealt with below in light of the Report, the Objections, and the Response.

## II. Analysis

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

Parties to civil cases have ten days from being served with a copy of the magistrate judge's recommended disposition to "serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). The Eleventh Circuit Court of Appeals has held that the failure of a party to object to the magistrate judge's report precludes review of findings of fact except on grounds of plain error or manifest injustice, but does not limit review of legal conclusions. *See Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (this rule only applies . . . in cases in which the magistrate judge has provided notice of these preclusive consequences).

### 1.  Obligations of Dan Djurin and Ivan Djurin

As a threshold matter, the Court must determine whether Defendants Dan Djurin and Ivan Djurin are individually responsible for the deficiency judgment. Capital One contends that the Djurins are responsible for the deficiency judgment jointly and severally as "Other Borrowers." The Djurins disagree, arguing that the language of the Note and the mortgage does not create individual obligations to pay the deficiency judgment and, in the alternative, is ambiguous.

Where the language of a contract is unambiguous, the legal effect of that language is a question of law. *Orkin Exterminating Co., Inc. v. Federal Trade Commission*, 849 F.2d 1354, 1360 (11th Cir. 1988). Whether the contract is ambiguous is also a question of law that may be resolved at the summary judgment stage. *Id.* The Court may find a contract term ambiguous if it is "reasonably susceptible to more than one interpretation." *Id.* (internal citation omitted). However, a mere assertion by one party of a dispute in contract interpretation should not convince the Court that a genuine ambiguity exists. *Id.*

Here, the Note and Mortgage were executed contemporaneously, include references to each other and involve the same subject matter. "Where several instruments are executed contemporaneously with a mortgage and are part of the same transaction, a mortgage may be modified by other instruments and all the documents are read together to determine and give effect to the intention of the parties." *In re Alford*, 403 B.R. 123, 132 ( Bankr. M.D. Fla. 2009) (internal citations omitted). Therefore, the Court will read the Note and Mortgage together.

The Note states that "Other Borrowers," here Dan Djurin and Ivan Djurin, are "personally liable for the principal balance and interest . . . and other obligations of the Borrower under the Agreement and Preferred Mortgage." D.E. 1 at 9, ¶5. The term "Borrower" is used interchangeably with the term "Mortgagor" throughout the Mortgage and it is clear that Djurin Marine, Inc., through its president Dan Djurin, is the

"Borrower." *See* D.E. 1 at 23.  In the event of default resulting in a deficiency, the Mortgage provides: "Mortgagee shall be entitled to collect any deficiency from Mortgagor."  D.E. 1 at 22, ¶39.  Furthermore, the statement above the Djurins' signatures clearly and unambiguously advises them of their responsibilities as signatories.  *See* D.E. 1 at 15 ("<u>OTHER BORROWERS</u>: . . . such person becomes personally liable for the Principal and interest thereon due under this agreement.").  Defendants' continued insistence that the language of the mortgage is susceptible to a different interpretation and that the language of the mortgage and Note should not be harmonized is unpersuasive and contrary to the obvious relationship of the two documents.

The Court finds that such a clear and unambiguous statement of the "Other Borrowers" responsibilities under the Note and its clear intention to incorporate the borrower's obligations under the Mortgage, coupled with the contemporaneous execution of both documents, is unequivocal proof of the parties' intentions to hold the Djurins, along with Djurin Marine, Inc., jointly and severally liable for the deficiency amount.  As such, the Djurins are responsible under the Note and Mortgage for the full amount of the deficiency judgment.  Accordingly, the Court adopts the findings of the Magistrate Judge as described in the Report with respect to the Djurins' responsibility for the deficiency judgment.

### 2. Value of the Vessel

On November 20, 2008, pursuant to this Court's Order, the Vessel was sold for

$1.2 million at a public auction held by the U.S. Marshal. Consistent with the terms of the Note, the sale price of the Vessel was deemed to be the fair market value of the Vessel for purposes of calculating the deficiency amount. *See* D.E. 1 at 14, ¶51 ("deficiency shall be the difference between the total outstanding [o]bligations secured by [the Note] and the net sale proceeds remaining after deducting from the actual sale price of the Vessel all costs and expenses incurred."). The Djurins contend that the sale price of the Vessel was far below fair market value, asking that the Court, sitting in equity, use its discretion to adjust upward the fair market value of the Vessel.

Here, the Djurins clearly and unambiguously contracted to determine the deficiency amount in the event of default under the Note, agreeing that the "fair market value" of the Vessel would be its actual sale price as secured "by public or private sale in *commercially reasonable manner*." D.E. 1 at 14, ¶51 (emphasis added). The Djurins made no objection to the sale of the Vessel. *See* Local Rule E(17)(g)(1) ("an objection must be filed within three working days following the sale"). Moreover, the Djurins do not argue that the public auction was conducted in a commercially unreasonable manner, merely that the sale price was too low to be considered fair market value. *See* D.E. 119 at 2, ¶2.

The Djurins' Objections present no authority to suggest that this Court should ignore the deficiency provision defining "fair market value" and conduct its own inquiry into the Vessel's fair market price. Indeed, it is a basic principle of contract law that "judicial equitable notions cannot override unambiguous contractual rights." *Leverso v.*

9

*SouthTrust Bank*, 18 F.3d 1527, 1534 (11th Cir. 1994) (citation omitted).  Without any evidence in the record showing that the lenders fraudulently induced the Djurins into agreeing to the deficiency provision of the Note, or that the public auction was tainted by fraud, collusion or conducted unreasonably, the Court is loathe to overturn an unambiguous and clear statement of the parties' agreement.  Accordingly, the Court adopts the findings of the Magistrate Judge as described in the Report with respect to the fair market value of the Vessel.

### 3. Attorney's Fees

The Note provides for attorney's fees and costs in connection with enforcement of the Note.  *See* D.E. 1 at 11, ¶18.  At the time Capital One filed its Motion for Summary Judgment on April 3, 2009, it had incurred a total of $86,135.57 in attorney's fees.  *See* D.E. 77-2 at 2.

In its review of attorney's fees, the Magistrate Judge's Report takes into account several factors, including number of docket entries (seventy-six), the duration of litigation and type of tasks that were included in the billing statement.  *See* D.E. 114 at 5-6. Finding charges for duplicative work, administrative or secretarial tasks billed as attorney or paralegal time and excessive fees for services, the Report recommends a twenty-five percent across-the-board reduction of the $86,135.57 amount.  *See id*. at 4-6. The Djurins object to this across-the-board cut as baseless and demand a larger across-the-board reduction.  *See* Objections, D.E. 119 at 3.

It is well-settled that a court may review attorney's fees for reasonableness, and

make line-item reductions where it finds, based on its knowledge and experience, that the fees are excessive. *See Lorranger v. Stierheim, et al.*, 10 F.3d 776, 782-83 (11th Cir. 1994). Where, as here, fee documentation is voluminous, the Court may apply an across-the-board reduction along with a clear and concise explanation of its reasons for the adjustment. *See id.* at 783. The Court's review of the eighteen pages of detailed charges using its own factors such as the number and complexity of motions as well as the factors enumerated in *Johnson v. Georgia Highway Express*, including time and labor required, novelty and difficulty of the questions presented and the customary fees for similar work in the community, among others, leads to the conclusion that a twenty-five percent reduction of the $86,135.57 amount is appropriate. 488 F.2d 714 (5th Cir. 1974) (the Court of Appeals considered twelve factors in its determination of whether the awarded amount of attorney's fees in a civil rights action was reasonable).

Furthermore, the record reveals that this action was consistently contested over its 20-month life span, giving rise to over one dozen motions. Finally, the Court's twenty-five percent across-the-board reduction of attorney's fees, lowering the figure to $64,604.68, is a greater discount when considering that Capital One currently claims $150,000 in attorney's fees. *See* Joint Pretrial Stipulation, D.E.11 at 12.

Accordingly, the Court adopts the findings of the Magistrate Judge as described in the Report reducing Capital One's attorney's fees by twenty-five percent.

### 4. *Custodia Legis* Fees

The Djurins argue that the *custodia legis* fees are unreasonable and have

provided an expert opinion stating that the amount of excessive charges being claimed by Capital One is $53,104.97.  *See* D.E. 73-2 at 9, ¶6.v.  This amount represents a significant portion of Capital One's total claim of $140,738.16 in *custodia legis* fees.  *See* D.E. 77 at 6.  The Court finds that the amount and reasonableness of *custodia legis* fees are genuine issues of fact best suited for presentation to the fact-finder.  Accordingly, the Court adopts the findings of the Magistrate Judge as described in the Report with respect to the *custodia legis* charges.

### III. Conclusion

For the reasons described above, it is **ORDERED AND ADJUDGED** that:

1. The Report and Recommendation on Plaintiff Capital One, National Association's Motion for Partial Summary Judgment, issued by U.S. Magistrate Judge Barry L. Garber on November 4, 2009 (D.E. 115), is adopted as stated in this Order.

2. The Motion for Summary Judgment filed by Plaintiff Capital One, National Association on April 3, 2009 (D.E. 77), is **GRANTED in part and DENIED in part** as described in this Order.

3. The issue of *custodia legis* fees is referred to U.S. Magistrate Judge Garber for an evidentiary hearing and a Report & Recommendation.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of December, 2009.

*/s/ Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**